## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 19 2018, 7:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Chad A. Montgomery
Montgomery Law Office
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Tran,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 19, 2018

Court of Appeals Case No.
79A04-1706-CR-1310

Appeal from the Tippecanoe Circuit Court

The Honorable Thomas H. Busch, Judge

Trial Court Cause No.
79C01-1606-FA-4

**Barteau, Senior Judge.**

# Statement of the Case

James Tran appeals his convictions of nine counts of child molesting, all as Class A felonies,[1] and one count of child molesting, as a Class C felony.[2] We affirm.

# Issue

Tran presents one issue for our review, which we restate as: whether the trial court erred by admitting into evidence certain text messages from his wife's phone.

# Facts and Procedural History

James Tran was charged with ten counts of child molesting for the molestation of three of his adopted daughters. At his trial on these charges, text messages from the cell phone belonging to his wife were admitted over his objection. A jury found Tran guilty as charged. The trial court imposed an aggregate sixty-four-year sentence. This appeal ensued.

# Discussion and Decision

Tran contends at his trial the trial court erroneously admitted Exhibits 36 through 74, which contain text messages from the phone of his wife, Lori. Tran

---

[1] Ind. Code § 35-42-4-3 (1998), (2007).

[2] Ind. Code § 35-42-4-3 (2007).

objected to the admission of these exhibits at trial, but the trial court admitted them over his objection.

[5] The trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse its ruling only upon a showing of an abuse of that discretion. *Paul v. State*, 971 N.E.2d 172, 175 (Ind. Ct. App. 2012). An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

[6] The text exchanges involved in this case begin on June 11, 2016 and continue to June 15, 2016. From June 11 to June 13 the messages contain statements such as "I'm fighting this to the end," "one person can rip this family apart," "sweetheart," and "love you," as well as discussions of cancelling vacations, needing to obtain extra money, and hiring an attorney. Ex. 36, 37, 38; *see also generally* Ex. 36-57.

[7] However, the tone of the messages changes commencing the afternoon of June 13. Tran texted about getting money for Lori from his 401K, and Lori stated that she is now "a single mom" and discussed the overwhelming tasks of rebuilding her and the kids' lives, having to find a job with good insurance, and selling Tran's guns and belongings and their house. Ex. 57, 60, 73, 63, 58, 65-66. Lori also mentions moving to South Carolina, and, in response, Tran agrees it would be best for her to go to South Carolina to be "with **our** grandkids." Ex. 61 (emphasis added). In the exchange, Tran also asks Lori if she thinks S.T. would drop the charges against him. Ex. 68. During the

exchange, Tran stated, "Looks like I'm on my own in this" to which Lori responded, "You're on your own?.what the heck do you think I'm not on my own…no job no insurance bills out the butt, my family ripped apart and now no husband who I trusted and adored for 29 years." Ex. 69.

[8] In particular, Tran asserts that Exhibits 36 through 74 should not have been admitted because the text messages were not properly authenticated as having been written by him. In order to lay a foundation for the admission of evidence, the proponent of the evidence must show that it has been authenticated. *Hape v. State*, 903 N.E.2d 977, 989 (Ind. Ct. App. 2009), *trans. denied*. This authentication requirement has been found to apply to the substantive content of text messages. *See id.* at 990-91. To satisfy the authentication requirement, the proponent must produce evidence sufficient to support a finding that the item is what its proponent claims. *See* Ind. Evidence Rule 901(a). Absolute proof of authenticity is not required; rather, the proponent of the evidence need only establish a reasonable probability that the item is what it is claimed to be. *Pavlovich v. State*, 6 N.E.3d 969, 976 (Ind. Ct. App. 2014), *trans. denied*. Once this reasonable probability is shown, any inconclusiveness regarding the item's connection to the events at issue goes to the item's weight, not its admissibility. *Id.*

[9] Evidence Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfy the authentication requirement, including testimony, by a witness with knowledge, that an item is what it is claimed to be. Evid. R. 901(b)(1). Another example is evidence of the appearance, contents, substance, internal

patterns, or other distinctive characteristics of the item, together with the surrounding circumstances. Evid. R. 901(b)(4).

[10] At trial, Lori identified Exhibits 36 through 74 as comprising text messages between herself and Tran. Tr. Vol. 3, pp. 52, 80. She explained that she had allowed the State to photograph the text messages contained on her phone and that the exhibits were the resulting pictures. *Id.* at 53, 80. Lori testified that she and Tran had been married for twenty-nine years, that Tran is and always had been identified in the contacts of her phone as "James Tran" along with his photograph, and that she texted him "all of the time" using that contact. *Id.* at 63, 57-58, 88. Additionally, Lori testified that, based upon the contents of the messages discussing family matters that were occurring at the time, she knew the messages were from Tran. *Id.* at 60-61. Lori also testified to the events leading up to the text messages, stating that their adopted daughter, S.T., was kicked out of the house in late March/early April 2016 for her bad attitude and that Lori subsequently received a call from the Department of Child Services on or about June 5, 2016. *Id.* at pp. 71-75.

[11] Lori explained that, due to the situation, Tran had moved out of their house on June 10, 2016 and was staying nearby at her mother's house. *Id.* at 81. In addition, she explained that neither she nor Tran believed S.T. was being truthful and that they were very upset with her for making the allegations against Tran. *Id.* at 77. At that point in time, Tran was denying any wrongdoing, Lori was supporting him in his denial, and they were planning to have Lori retain an attorney to represent Tran. *Id.* at 80, 82.

[12]     Lori further testified that circumstances changed on June 13, the day she was supposed to retain the attorney. *Id.* at 81-82. Prior to meeting with the attorney, she spoke on the phone with Tran and told him he "better be telling me the truth, I'm getting ready to go down there and fight for [him] the biggest fight of our life and I don't want to be made a fool out of." *Id.* at 82-83. Tran then told her that "he had done some things to the girls," and he admitted touching S.T. as well. *Id.* at 83. Lori questioned their other two adopted daughters who acknowledged that Tran had molested them, after which Lori told Tran she would not use their money to pay for the attorney. *Id.* at 86. She also testified that Tran took two distributions from his 401K account to help with expenses. *Id.* at 89.

[13]     Based on the foregoing, we conclude the State established a reasonable probability that the text messages were between Lori and Tran. Both Lori's testimony to the fact that the text exchanges were between her and Tran and her testimony of the distinctive characteristics of the messages connecting them to Tran were more than sufficient to authenticate the text messages as being authored by Tran.

# Conclusion

[14]     Thus, the trial court did not abuse its discretion by admitting Exhibits 36 through 74 into evidence at trial.

[15]     Affirmed.

Najam, J., and Riley, J., concur.